IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NANCY HELLYER | : |
|  | :  CIVIL ACTION |
| v. | : |
|  | :  NO. 10-2724 |
| COUNTY OF BUCKS, ET AL. | : |

**SURRICK, J.**                                                                                                          **JANUARY  31 , 2014**

## MEMORANDUM

Presently before the Court is Defendants County of Bucks, Terrence Moore, Harris Gubernick and Joan Crowe's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) Or in the Alternative For a More Definite Statement Pursuant to F.R.C.P. 12(e). (ECF No. 11.)  For the following reasons, the Motion is granted in part and denied in part.

**I.      BACKGROUND**

The facts, as presented here, are taken from Plaintiff's Complaint. (Compl., ECF No. 1.)[1] Plaintiff's Complaint alleges that Plaintiff Nancy Hellyer, who currently resides in Hulmeville, Pennsylvania, was formerly an inmate at the Bucks County Correctional Facility ("BCCF") in Doylestown, Pennsylvania. (*Id*. at ¶ 2.)  BCCF is operated by Defendant County of Bucks. (*Id*. at ¶ 4.)  Plaintiff was incarcerated at BCCF at various points in 2007 and 2008. (*Id*. at ¶ 7.) During the course of her incarceration, Plaintiff was assigned to work in the BCCF dispensary. (*Id*. at ¶ 8.)

Among the correctional officers assigned to oversee Plaintiff during her incarceration were Defendants Mark Eldredge and Derrick Fane, who are being sued in both their individual

---

[1] "In deciding a motion to dismiss, all well-pleaded allegations of the complaint must be taken as true and interpreted in the light most favorable to the plaintiffs, and all inferences must be drawn in favor of them." *McTernan v. City of York*, 577 F.3d 521, 526 (3d Cir. 2009).

and official capacities in this action. (*Id*. at ¶¶ 5, 7.) Plaintiff alleges that Officers Eldredge and Fane repeatedly interacted with Plaintiff in a way that was flagrantly sexual. These interactions involved both inappropriate comments and physical harassment.

Plaintiff claims that Officer Eldredge frequently asked her if she was sexually attracted to "big bald men," and made comments about "her long legs," and about his erections. (*Id*. at ¶ 10.) Plaintiff says that Officer Eldredge, on several occasions, grabbed her breast. (*Id.*) Finally, Officer Eldredge even took Plaintiff's hands and placed it on his exposed genitals. (*Id*.)

Officer Fane is accused of similarly inappropriate behavior. Officer Fane often made sexually suggestive comments to Plaintiff, "telling her that he liked older women with long hair and long legs." (*Id*. at ¶ 9.) Officer Fane "talked to her about his private parts," commented about the size of Plaintiff's breasts, and mentioned that Plaintiff's appearance aroused him. (*Id*.) Officer Fane also composed pornographic and other sexually suggestive letters and gave them to Plaintiff. (*Id*.) Officer Fane often attempted to create situations where he could be alone with Plaintiff in private. (*Id*.) Both Officers Eldredge and Fane frequently made obscene gestures at Plaintiff. (*Id*. at ¶ 11.) Plaintiff "objected constantly" to this treatment. (*Id*. at ¶ 15.)

Plaintiff attempted to report this harassment to a number of BCCF employees. (*Id*. at ¶ 12.) After she reported the abuse to Defendant Joan Crowe, BCCF's Nursing Supervisor, Crowe fired Plaintiff from her dispensary job. (*Id*. at ¶¶ 12-13.) Crowe explained that the male officers' constant presence around Plaintiff justified her firing. (*Id*. at ¶ 13.) When Plaintiff pointed out that she could not control the officers' behavior, "Ms. Crowe was unmoved." (*Id*.)

This harassment was neither subtle nor secret. Plaintiff spoke with other BCCF employees and individuals outside the prison about the abuse. (*Id*. at ¶ 12.) Some correctional

officers referred to Officer Eldredge as Plaintiff's "boyfriend," which Plaintiff points to as evidence that knowledge of the inappropriate contact was widespread. (*Id*. at ¶ 14.) Plaintiff also discusses rumors that Officers Eldredge and Fane had previously engaged in "sexual relationships with other women inmates" at BCCF, and claims this was part of a pattern whereby "[s]exual contact between women inmates and guards was ignored." (*Id*. at ¶¶ 17-18.) Officers Eldredge and Fane "had virtually unrestricted access to the Plaintiff" despite the fact that their pattern of improper conduct was widely known. (*Id*. at ¶ 19.)

Plaintiff was later contacted by detectives from both BCCF and the Bucks County District Attorney's Office. (*Id*. at ¶ 16.) These detectives informed Plaintiff that they were aware of "inappropriate contacts between Fane and Eldredge and women inmates." (*Id*.) Plaintiff showed the detectives the sexually suggestive letters she had received, and otherwise cooperated with the investigation. (*Id*.)

Plaintiff alleges that she was the subject of severe and ongoing sexual abuse by Officers Fane and Eldredge. She further alleges that "a traditional code of silence" among BCCF officials shielded her abusers from the consequences of their improper behavior. (*Id*. at ¶ 18.) Plaintiff alleges that Defendants County of Bucks, Jane Crowe, Terrence Moore, and Harris Gubernick exhibited deliberate indifference to her plight and to the "code of silence" which prevailed within the prison's walls, and failed to protect her from sexual assaults by corrections officers subject to their supervision. (*Id*. at ¶¶ 20-21.) Plaintiff claims that as a result of the harassment she experienced, she suffered emotional and physical injuries, in addition to the loss of her job at BCCF. (*Id*. at ¶¶ 22, 31, 40.)

Case 2:10-cv-02724-RBS Document 28 Filed 01/31/14 Page 4 of 19

Plaintiff raises four claims.[2] First, she argues that her rights under the First, Eighth, and Fourteenth Amendments[3] to the United States Constitution were violated because of the offending officers' behavior and the policy of Defendant Bucks County tolerating such behavior ("Count I"). (*Id*. at ¶¶ 24-29.) Second, she seeks relief for assault and battery, citing the sexual assault she suffered at BCCF ("Count III").[4] (*Id*. at ¶¶ 38-41.) Third, she claims that Defendants are liable for the negligent and intentional infliction of emotional distress ("Count IV"). (*Id*. at ¶ 43.) Finally, Plaintiff claims that Defendant County of Bucks is liable for negligently employing Officers Eldredge and Fane despite the County's knowledge of their actions. (*Id*. at ¶¶ 45-47.)

Plaintiff filed this Complaint on June 8, 2010. (Compl.) Defendants County of Bucks, Crowe, Gubernick, and Moore ("Bucks County Defendants") filed this Motion to Dismiss. (Defs.' Mot., ECF No. 11; Defs.' Mem., ECF No. 12.) Plaintiff filed a response to Bucks County Defendants' Motion to Dismiss. (Pl.'s Resp., ECF No. 20; Pl.'s Mem., ECF No. 20-1.)

Defendant Mark Eldredge filed an Answer to Plaintiff's Complaint. (ECF No. 3.) Defendant Derrick Fane filed an Answer to Plaintiff's Complaint. (ECF No. 24.) Neither Eldredge nor Fane has joined the Bucks County Defendants' Motion to Dismiss.

---

[2] Plaintiff has withdrawn Count II of her Complaint, which sought relief under the Pennsylvania Constitution. (Pl.'s Resp. ¶¶ 5-6, ECF No. 20; Pl.'s Mem. 17, ECF No. 20-1.)

[3] Plaintiff's "claims regarding conditions of confinement remain bounded by the Eighth Amendment, the explicit textual source of constitutional protection in the prison context." *Barney v. Pulsipher*, 143 F.3d 1299, 1310 n.10 (10th Cir. 1998).

[4] Plaintiff's caption to "Count III" states that she is seeking relief from all Defendants; however, she later "demands Judgment against Defendant Fane and Eldredge for assault and battery." (*Id*. at ¶ 41.) We will grant Plaintiff leave to amend her Complaint so as to clarify this point.

4

## II.    LEGAL STANDARD

### A.    Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)

Under Federal Rule of Civil Procedure 8, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Federal Rule of Civil Procedure 12(b)(6) provides that a complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A complaint that merely alleges entitlement to relief, without alleging facts that show entitlement, must be dismissed. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). This "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary elements." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). Nevertheless, the Court need not accept as true "unsupported conclusions and unwarranted inferences," *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 183-84 (3d Cir. 2000), or the plaintiff's "bald assertions" or "legal conclusions," *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997).

When considering a Rule 12(b)(6) motion, the Court's role is limited to determining whether a plaintiff is entitled to offer evidence in support of her claims. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). The Court does not consider whether a plaintiff will ultimately prevail. *See id*. A defendant bears the burden of establishing that a plaintiff's complaint fails to

state a claim. *See Gould Elecs. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000).

> **B.     Motion for a More Definite Statement Pursuant to Federal Rule of Civil Procedure 12(e)**

Federal Rule of Civil Procedure 12(e) permits a party to "move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). Rule 12(e) is part of the "district court's case-management arsenal," *Twombly*, 550 U.S. at 593 n.13, that, in conjunction with the rest of Rule 12 and Rule 8, serves "to frame and govern [the] court's assessment of the quality of a pleading" *Sony BMG Music Entm't v. Cloud*, No. 08-1200, 2008 WL 3895895, at *2 (E.D. Pa. Aug. 22, 2008). Generally speaking, "Rule 12(e) motions are disfavored in light of the liberal pleading standards established by Fed. R. Civ. P. 8(a)." *Transport Int'l Pool, Inc. v. Ross Stores, Inc.*, No. 06-1812, 2009 WL 1033601, at *2 (E.D. Pa. Apr. 15, 2009); *see also Country Classics at Hill Homeowners' Ass'n v. Country Classics at Morgan Hill, LLC*, 780 F. Supp. 2d 367, 371 (E.D. Pa. 2011) ("[M]otions for a more definite statement are 'highly disfavored.'"). Courts will grant a Rule 12(e) motion only "if a pleading is so vague or ambiguous that the opposing party cannot reasonably be required to make a responsive pleading." *Country Classics*, 780 F. Supp. 3d at 371 (internal quotations omitted). Rule 12(e) motions are not a substitute for the discovery process. *See MK Strategies, LLC v. Ann Taylor Stores Corp.*, 567 F. Supp. 2d 729, 737 (D.N.J. 2008) (stating that Rule 12(e) motions are not appropriate where the more definite statement sought "presents a proper subject for discovery"); *WIH Mgmt., Inc. v. Heine*, No. 99-3002, 1999 WL 778319, at *4 (E.D. Pa. Sept. 30, 1999) (noting that a Rule 12(e) motion is not a substitute for the discovery process); *Steinberg v.*

*Guardian Life Ins. Co.*, 486 F. Supp. 122, 123 (E.D. Pa. 1980) (finding Rule 12(e) inapplicable where "[a]dditional information may be obtained from the discovery procedures").

## III.   DISCUSSION

Defendants seek dismissal of the Complaint against Bucks County Defendants on several grounds.  First, they argue that Plaintiff fails to state a claim for the deprivation of her constitutional rights.  (Defs.' Mem. 4.)  Second, they argue that Plaintiff's claims against Crowe, Gubernick, and Moore in both their individual and official capacities are duplicative.  (*Id*. at 19.)  Third, Defendants argue that Plaintiff's state law claims under Counts III, IV, and V are barred as a matter of law.  (*Id*. at 20.)

### A.   Section 1983 Claim Against Defendant County of Bucks

#### 1.   Monell *Claim*

Plaintiff brings a constitutional claim against Defendant County of Bucks pursuant to 42 U.S.C. § 1983.  "To establish a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a violation of a right protected by the Constitution or laws of the United States that was committed by a person acting under the color of state law."  *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000).  In order to establish municipal liability for civil rights violations committed by employees of a governmental entity under *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978), a plaintiff must show that the entity – in this case, the County of Bucks – pursued or sanctioned a policy or custom that engendered constitutional violations. "The municipality can only be liable when the alleged constitutional transgression implements or executes a policy, regulation, or decision officially adopted by the governing body or informally adopted by custom."  *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996) (citing *Monell*,

436 U.S. at 690). "There is no respondeat superior theory of municipal liability, so a city may not be held vicariously liable under § 1983 for the actions of its agents." *Sanford v. Stiles*, 456 F.3d 298, 314 (3d Cir. 2006). Therefore, a plaintiff must demonstrate "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 214-15 (3d Cir. 2001). The municipal policy or custom must be the "moving force" behind the constitutional violation such that there is a direct link between the municipal policy or custom and the deprivation of constitutional rights. *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 404 (1997).

The existence of a policy or custom can be established (1) by showing that a "decisionmaker possessing final authority to establish municipal policy with respect to the action issued an official statement of policy," *Jiminez v. All Am. Rathskeller*, 503 F.3d 247, 250 (3d Cir. 2007) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986)), or (2) by demonstrating that a custom exists "when, though not authorized by law, 'such practices of [county] officials [are] so permanent and well settled' that they operate as law," *id*. (quoting *Monell*, 436 U.S. at 690).

Once a policy or custom is identified, a plaintiff must establish that the entity maintained the policy or custom with "deliberate indifference" to the constitutional deprivations that the policy or custom caused. *City of Canton v. Harris*, 489 U.S. 378, 389 (1989); *see also Beck*, 89 F.3d at 972 (3d Cir. 1996) (stating that the "deliberate indifference" standard has been applied to a range of claims of municipal liability based on policy or custom). Deliberate indifference requires that a plaintiff establish "something more culpable must be shown than a negligent failure to recognize a high risk of harm to plaintiffs." *Black by Black v. Ind. Area Sch. Dist.*, 985

F.2d 707, 712-13 (3d Cir. 1993) (internal quotations omitted).  Furthermore, a plaintiff must establish that the deliberate indifference to which she was subjected came about *as a result* of the policy.  See *Monell*, 436 U.S. at 690-91.  The Third Circuit has held that evidence of such policies, including evidence which points to a "code of silence among officers" and a municipality's concomitant refusal to take disciplinary action, can be sufficient to establish a *Monell* claim.  *Bailey v. Cnty. of York*, 768 F.2d 503, 507 (3d Cir. 1985) ("In an appropriate case, even in the absence of formal agency conduct, an official policy may be inferred from informal acts or omissions of supervisory municipal officials"); *see also Jackson v. City of Pittsburgh*, 688 F. Supp. 2d 379, 398 (W.D. Pa. 2010).

  Plaintiff claims that BCCF officials were deliberately indifferent to her situation, and claims that "this county, this prison, and Defendant Gubernick in particular are not strangers to this type of misconduct or similar claims."  (Pl.'s Mem. 2.)  Plaintiff points to a series of civil rights actions based on similar facts, previous convictions of other BCCF correctional officers for felony sexual assault, and a sex scandal at BCCF in the late 1990s.  (*Id*. at 3.)  According to Plaintiff, the "custom or unwritten policy was to ignore sexual abuse and the prison rules that required that incidents be reported and investigated."  (*Id*. at 8.)

  Plaintiff's Complaint contains sufficient factual allegations to sustain her *Monell* claim.  Plaintiff spoke with a host of prison and county officials about the offending officers' conduct.  (Compl. ¶ 12.)  Plaintiff further spoke with Bucks County Detectives about the constitutional violations she had suffered.  (*Id*. at ¶ 13.)  Despite these conversations, county officials remained indifferent to Plaintiff's plight and failed to institute procedures which would remedy the situation.  Plaintiff's *Monell* claim can survive a motion to dismiss because it is plausible that the

County's policies or customs fostered constitutionally forbidden behavior.

We will permit Plaintiff's *Monell* claims to proceed. At this stage of litigation, we must accept Plaintiff's plausible contentions as true. Plaintiff has met her burden to state a claim for relief which can be granted. It is clear that BCCF has struggled with sexual abuse of prisoners over the course of recent years. We do not know what steps BCCF and the County of Bucks have taken to remedy these problems and to prevent them from reoccurring. A plaintiff must "'simply establish a municipal custom coupled with causation – i.e., that policymakers were aware of similar unlawful conduct in the past, but failed to take precautions against future violations, and that this failure, at least in part, led to their injury.'" *Beck*, 89 F.3d at 972 (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 851 (3d Cir. 1990)). Plaintiff states a plausible *Monell* claim for purposes of advancing to the discovery stage. Accordingly, Defendants' Motion to Dismiss Plaintiff's *Monell* claim is denied.

### 2. Respondeat Superior

Defendants seek dismissal of Plaintiff's § 1983 claim against County of Bucks, pointing out that § 1983 does not allow for liability on the basis of a theory of *respondeat superior*. (Defs.' Mem. 8-10.) Although we agree that *respondeat superior* cannot support § 1983 liability, Plaintiff does not cite *respondeat superior* as the basis for County of Bucks' liability. (Pl.'s Mem. 16.) Rather, Plaintiff has stated a *Monell* claim against the County. Accordingly, Defendants' motion to dismiss the § 1983 claim against County of Bucks is denied.

### B. Section 1983 Claim Against Defendants Crowe, Gubernick, and Moore

Defendants claim that Plaintiff has "failed to allege sufficient facts to establish that Gubernick, Moore, and Crowe were personally involved in Plaintiff's alleged constitutional

injuries." (Defs.' Mem. 7.) A constitutional claim against a prison official must meet two requirements: (1) "the deprivation alleged must be, objectively, sufficiently serious;" and (2) the "prison official must have a sufficiently culpable state of mind." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotations omitted). In prison conditions cases, "that state of mind is one of 'deliberate indifference' to inmate health or safety." *Id*. This standard is subjective, not objective, "meaning that the official must actually be aware of the existence of the excessive risk; it is not sufficient that the official should have been aware." *Beers-Capitol v. Whetzel*, 256 F.3d 120, 133 (3d Cir. 2001).

Plaintiff claims that Crowe, Gubernick, and Moore were aware of the existence of the excessive risk of sexual assault, and that Plaintiff has therefore stated a viable § 1983 claim against all three individual Defendants. (Pl.'s Mem. 12.)

        *1.     Defendants Harris Gubernick and Terrence Moore*

Plaintiff's § 1983 claims against Gubernick and Moore consist entirely of speculation. Plaintiff points to an earlier action in this District, *Horak v. Cnty. of Bucks*, No. 03-4695, 2004 WL 877965 (E.D. Pa. Apr. 13, 2004), in which a BCCF inmate sued the County of Bucks and a number of individual defendants after being sexually assaulted by a correctional officer. (Pl.'s Mem. 2.) Plaintiff cites to Horak's brief as evidence of a pattern of sexual abuse at BCCF dating back to the late 1980s. (*Id*. at 3.)

Plaintiff's claim against Gubernick, who was a defendant in the *Horak* action but was awarded summary judgment, *Horak*, 2004 WL 877965, at *6, fails to state a claim. Plaintiff argues that as director of the prison, Gubernick "had responsibility for prison operations that included hiring, training and supervision of corrections officers." (Pl.'s Mem. 14.) Plaintiff

claims that information "was to flow to" Gubernick as director of the prison. (*Id*. at 15.) Finally, Plaintiff argues that Gubernick's "added knowledge and experience" as a defendant in the *Horak* action "makes his knowledge extant." (*Id*.) These are conclusory statements, not factual allegations related to the circumstances of Plaintiff's case. The fact that Defendant Gubernick was aware of sexual abuse at BCCF that occurred many years before and was responsible for different prison guards does not establish his culpability in the instant action. We will not allow a claim that has not asserted a single factual allegation against Gubernick to proceed based upon the fact that he was sued, nearly a decade ago, in an unrelated case. Plaintiff offers no facts here to support her claim that Gubernick bears supervisory liability under § 1983. Accordingly, her claim against Gubernick will be dismissed.

Plaintiff's claim against Moore meets a similar fate. Plaintiff cites her Complaint, which states that as Warden of BCCF, Moore "was in charge of the prison, including hiring, training and supervision." (Pl.'s Mem. 13.) According to Plaintiff, Moore – who was not Warden at the time of the events that prompted the *Horak* litigation and was not named as a defendant there – must have known about the problem in order to "'get up to speed' when he took his job." (*Id*.) Plaintiff says that a "jury could conclude this must have been a subject of discussion." (*Id.*) Plaintiff further speculates that "if the police knew, the Warden knew, even if only the police told him." (*Id*.) Plaintiff suggests that "[o]ne can ask how was it all these other County employees knew but not the Warden?" (*Id*. at 14.)

Plaintiff wants us to permit this claim to proceed because a jury could find "that all informational roads led to the man at the top, Defendant Moore." This we cannot do. (*Id*.) Plaintiff's claim is based on pure speculation. Plaintiff does not allege that she filed formal

complaints with the Warden.[5] Plaintiff does not allege that Moore had actual or constructive knowledge of the events in question. Instead, she points to imaginary conversations that must have taken place and makes conclusory statements about the prison's administrative structure. This does not support a claim against Moore.

All of Plaintiff's claims against Gubernick and Moore will be dismissed. However, we will grant Plaintiff leave to amend her Complaint so as to substantiate her claims against these Defendants.[6]

### 2. *Defendant Joan Crowe*

#### a. Section 1983 Claims Against Defendant Crowe

Plaintiff sets forth allegations against Crowe that do state a claim for which relief could be granted. According to Plaintiff, Crowe was Plaintiff's supervisor while Plaintiff was employed in the BCCF dispensary. (Compl. ¶ 6.) Many of the inappropriate contacts between the offending officers and Plaintiff occurred in the dispensary. (Compl. ¶ 10.) Plaintiff specifically reported the abuse to Crowe, so that Crowe had actual knowledge of Officers Eldredge's and Fane's behavior and Plaintiff asked for Crowe's help. (*Id*. at ¶ 12.) Plaintiff alleges that Crowe was personally critical of Plaintiff and eventually fired her because the officers were always hanging around the dispensary and Plaintiff. (*Id*. at ¶ 13.)

---

[5] The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title or any other Federal law, by a prisoner confined in jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Plaintiff has not pointed to any formal grievances that she filed while an inmate at BCCF.

[6] The Third Circuit has consistently held that a plaintiff should be given leave to amend a deficient complaint unless doing so would be inequitable or futile. *Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir. 2000).

Plaintiff has alleged sufficient facts against Crowe to allow her to proceed. Plaintiff outlines specific factual allegations that link Crowe to the abuse suffered by Plaintiff. Plaintiff presents sufficient facts from which she could plausibly prevail on a claim that Crowe exhibited deliberate indifference to her problems.

### b. Qualified Immunity

Defendants also claim that Crowe is entitled to qualified immunity. Qualified immunity shields government officials from suit even if their actions were unconstitutional as long as those officials' actions "d[id] not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). The burden of establishing qualified immunity falls on the official claiming it as a defense. *See Harlow*, 457 U.S. at 819 (describing qualified immunity as a defense and noting that "if the official pleading the defense claims extraordinary circumstances and can prove that he neither knew nor should have known of the relevant legal standard, the defense should be sustained"). For the official to have "fair warning," *United States v. Lanier*, 520 U.S. 259, 270 (1997), that his or her actions violate a person's rights, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). However, "'[t]his is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the

14

unlawfulness must be apparent.'" *Wilson v. Layne*, 526 U.S. 603, 615 (1999) (quoting *Anderson*, 483 U.S. at 640).

It is clear that Plaintiff had an Eighth Amendment right not to be sexually assaulted by corrections officers at BCCF. The burden of demonstrating qualified immunity falls on Crowe, and she has proffered no evidence that would indicate that a reasonable person in her position would not be aware of an inmate's right not to be subjected to sexual abuse. Plaintiff's claims against Crowe are substantially more specific than her claims against Gubernick and Moore. At this juncture, Defendants have not established that Crowe is protected by qualified immunity.

### C.    Individual and Official Capacity Claims

Defendants argue that "Plaintiff's claims against Defendants Gubernick, Moore and Crowe in their official capacities" are "duplicative and redundant," and "therefore should be dismissed with prejudice." (Defs.' Mem. 19.) Plaintiff responds that the "Defendants' argument misses the point," and that "the individual Defendants were sued in their individual capacity for supervisory liability." (Pl.'s Mem. 17.)

Although it is well-settled that bringing a § 1983 claim against a municipal employee in his or her official capacity is the equivalent of bringing an action against the government entity itself, *Smith v. Sch. Dist. of Phila.*, 112 F. Supp. 2d 417, 425 (E.D. Pa. 2000), it is within the court's discretion to determine whether the § 1983 suit against Crowe is redundant. Other courts in this District have declined to dismiss official capacity suits as redundant at this early stage of litigation if doing so would "serve no laudable purpose." *Capresecco v. Jenkintown Borough*, 261 F. Supp. 2d 319, 322 (E.D. Pa. 2003); *see also Coffman v. Wilson Police Dep't*, 739 F. Supp. 257 (E.D. Pa. 1990). This is such a situation. Crowe will have to answer charges against her in

her individual capacity regardless of the disposition of her official capacity claim. Furthermore, as above noted, we are permitting Plaintiff to file an amended complaint. Since dismissing this claim now serves no laudable purpose, we decline to do so.

### D. Plaintiff's State Law Claims

#### 1. Overview

Defendants move for dismissal of Plaintiff's state law claims in Counts III, IV, and V of the Complaint. (Defs.' Mem. 20.) Defendants argue that Pennsylvania's Political Subdivision Tort Claims Act ("PSTCA"), 42 Pa. Cons. Stat. Ann. § 8541 *et seq.*, shields both the County and the individual Bucks County Defendants from exposure to liability.

The PSTCA provides immunity from personal injury suits for the Commonwealth's political subdivisions, such as counties, except under limited circumstances. "Except as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person." Pa. Cons. Stat. Ann. § 8541. Counties are local agencies for purposes of the statute. *Francis v. Northumberland Cnty.*, 636 F. Supp. 2d 368, 401 n.72 (M.D. Pa. 2009) (noting that 42 Pa. Cons. Stat. Ann. § 8501 defines "local agency" to include counties). The PSTCA creates eight narrow exceptions to this immunity. *See* Pa. Cons. Stat. Ann. § 8542(b) (listing the exceptional situations in which a political subdivision can be held liable).[7]

Pursuant to the PSTCA, an employee of a local agency has immunity if: (1) the local

---

[7] The statute provides that "acts by a local agency or any of its employees may result in the imposition of liability on a local agency" if they fall within one of eight specific categories: "(1) Vehicle liability; (2) Care, custody or control of personal property; (3) Real property; (4) Trees, traffic controls and street lighting; (5) Utility service facilities; (6) Streets; (7) Sidewalks; and (8) Care, custody or control of animals." 42 Pa. Cons. Stat. Ann. § 8542(b).

agency has immunity under § 8541, and (2) the employee was acting within the scope of his office or duties when he engaged in the alleged conduct. *Id*. § 8545. However, immunity for an official does not exist when the "act constituted a crime, actual fraud, actual malice or willful misconduct." *Id.* § 8550. Proof that immunity does not exist under the PTSCA requires a "demanding level of fault." *Sanford*, 456 F.3d at 315.

### 2. Defendant County of Bucks

Plaintiff argues that there is no immunity for County of Bucks because Plaintiff "has pled acts that constitute a crime or willful misconduct," therefore "bringing it within the purview" of 42 Pa. Cons. Stat. Ann. § 8550. (Pl.'s Mem. 18.) As we have noted, § 8550 of the Act "jettisons only those immunities held by municipal employees and only then for forms of willful misconduct. This section does not, however, abrogate the general retention of municipal immunity." *Travis v. Deshiel*, No. 11-1689, 2011 U.S. Dist. LEXIS 61713, at *13 n.3 (E.D. Pa. June 9, 2011). Section 8550 applies only to municipal employees. Plaintiff's assertion is therefore incorrect.

The allegations in Plaintiff's Complaint do not satisfy any of the narrow exceptions delineated in § 8542(b). County of Bucks is entitled to immunity from suit on Plaintiff's tort claims. Accordingly, Counts III, IV, and V of the Complaint are dismissed as to County of Bucks.

### 3. Defendant Crowe

Crowe may eventually be entitled to immunity from tort claims under the PTSCA. At this stage, however, it remains plausible – based upon Plaintiff's pleadings – that Crowe could have committed crimes, be guilty of willful misconduct, or acted out of actual malice, in ignoring

Plaintiff's entreaties for assistance and in firing her from her position at the dispensary. Plaintiff offers several crimes that Plaintiff may have committed. (Pl.'s Mem. 20.) Our task at this juncture is not to evaluate whether Plaintiff is likely to prevail in overcoming the PTSCA's grant of immunity, but rather to identify claims which are not viable. Plaintiff has adequately plead tort claims against Crowe, and those claims are not barred as a matter of law. Accordingly, Defendants' Motion will be denied as to Crowe.

    4.    *Defendants Gubernick and Moore*

As we have noted with respect to Plaintiff's § 1983 claims against Defendants Gubernick and Moore, Plaintiff has offered no factual allegations that connect Gubernick and Moore with any improper activities. This is true in the context of Plaintiff's tort claims as well. Plaintiff has not produced any facts which support claims of "willful misconduct," "actual malice," or criminal wrongdoing. Accordingly, we will dismiss the tort counts in Count III and IV with respect to Gubernick and Moore.

    **E.**    **Motion for a More Definite Statement**

Finally, Defendants have moved for a more definite statement pursuant to Federal Rule of Civil Procedure 12(e). Defendants claim that "Plaintiff lumps all Defendants into the 1983, state constitution, assault and battery, and negligent and intentional infliction of emotional distress causes of action." (Defs.' Mem. 23.) As we have noted, a motion under Rule 12(e) is not a substitute for a motion under Rule 12(b)(6) or for discovery procedures.[8] Plaintiff has identified

---

[8] Defendants cite to a single case in support of their motion for a more definite statement, *Boyer v. Lehigh Valley Hosp. Ctr.*, 1990 U.S. Dist. LEXIS 8221, at *19-20 (E.D. Pa. June 29, 1990). In *Boyer*, the plaintiff failed to set forth separate claims of relief, articulate against which defendants she sought relief, or mention key elements of the causes of action under which she sought relief. Plaintiff's Complaint here, unlike the Complaint in *Boyer*, is facially adequate.

distinct causes of action against the various Defendants, and has stated a claim so that Defendants can reasonably file responsive pleadings. We have identified several deficiencies in Plaintiff's Complaint. We have also granted Plaintiff leave to amend her Complaint. This will allow Plaintiff to address any inadequacies in her pleadings.

**IV.   CONCLUSION**.

For the foregoing reasons, Defendants' Motion to Dismiss will be granted as to all claims against Gubernick and Moore, and as to Counts III, IV, and V against Defendant County of Bucks. Defendants' Motion to Dismiss will be denied as to Crowe, and as to Plaintiff's Count I claim against County of Bucks. Plaintiff is granted leave to amend her Complaint to address deficiencies noted in this Memorandum.

An appropriate Order follows.

**BY THE COURT:**

**R. BARCLAY SURRICK, J.**